UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-84-KSF

TRULEY ROSE                                                                                  PLAINTIFF

v.                                    **OPINION & ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                            DEFENDANT

* * * * * * * * *

The plaintiff, Truley Rose, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI") based on disability. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

I.      OVERVIEW OF THE PROCESS

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)      If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2)      If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II.   THE ADMINISTRATIVE DECISION

In this case, the ALJ conducted a hearing on June 23, 2006, and issued his opinion denying Rose's application for SSI benefits on July 26, 2006. [TR 330, 15]  At the time of the ALJ's decision, Rose was 53 years old. She has a high school education and stopped working in 1975. She claims that she became disabled on August 21, 2004 from a combination of severe impairments including rheumatoid arthritis and neuralgia. [TR 15]

The ALJ went through all five steps in making his determination. First, the ALJ determined that Rose was not engaged in any substantial gainful employment since the onset of her alleged impairments. Although the ALJ did find that Rose had severe impairments related to her rheumatoid arthritis and neuralgia, the ALJ determined that neither of these severe impairments met or medically equaled a listed impairment contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ did, however, find that Rose had the residual functional capacity to perform a range of light exertional work that allows for a sit/stand option and requires no work around unprotected heights or hazardous equipment. Additionally, the ALJ determined that Rose can perform no more than occasional driving of a motor vehicle or operation of equipment, and no more than frequent gross or fine

manipulation with either hand.

Inasmuch as Rose had no past relevant work, the burden then shifted to the Commissioner to show that other work exists in the national economy that Rose could perform. The Commissioner met this burden through the testimony of a vocational expert who testified at the hearing that Rose could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors. The ALJ's decision that Rose is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied her request for review on February 6, 2007. This case is now ripe for review under 42 U.S.C. § 405(g), 1383(c)(3).

### III.  ANALYSIS

On appeal, Rose argues that the ALJ's determination was not based on substantial evidence for several reasons. First, Rose contends that the ALJ failed to give greater weight to the opinion of her treating physician. Generally, the ALJ should give controlling weight to a disability opinion by a treating physician if it is well-supported by clinical and laboratory findings and is consistent with other evidence. The ALJ may consider the length and nature of the treating relationship, the supportability of the opinion, consistency, specialization, and any other factors that may be appropriate. *See* 20 C.F.R. § 416.927(d)(2)(2007). The supportability of the opinion depends on the degree to which the source presents relevant evidence to support the opinion, particularly medical signs and laboratory findings. *See* 20 C.F.R. § 416.927(d)(3)(2007); *see also Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711-712 (6th Cir. 1988). The Sixth Circuit has held that a treating physician's opinion may be "undercut, to a degree, by the absence of underlying objective findings or corroborative clinical evidence." *Sias v. Secretary of Health and Human*

4

*Services*, 861 F.2d 475, 479 (6th Cir. 1988).

Rose contends that the ALJ improperly rejected the opinion of her treating physician.[1]  Dr. Wolfe completed a Physical Capacities Evaluation on June 23, 2005 which placed the following limitations on Rose:  stand/walk only 1 hour per day; sit for 3 hours per day; occasionally lift up to10 pounds and never left over 10 pounds; no simple grasping, pushing, pulling or fine manipulation; no using feet for repetitive movements as in foot controls; only occasionally bend and reach above shoulder level; never squat, crawl, or climb.  Dr. Wolfe also totally restricted Rose from working near unprotected heights, being around moving machinery, any exposure to marked change in temperature and humidity; driving automotive equipment; any exposure to dust, fumes, and gases. [TR 257]

The ALJ rejected Dr. Wolfe's opinion because it is not supported by any clinical findings and because Rose's "actual level of functioning far exceed her alleged limitations." [TR 19] In fact, the record of his office notes from June 23, 2005, the same day he filled out the Physical Capacities Evaluation, reveal that Rose was able to care for her husband, who suffers from cancer, including driving him 30-40 miles each way to receive chemotherapy.  She also reported to Dr. Wolfe that she was doing more activity around the house secondary to her husband's illness.  In fact, the June 23, 2005 office note is the only occasion in which Rose made many of the complaints reflected in the Physical Capacities Evaluation. [TR288]  On her previous visit to Dr. Wolfe on February 24, 2005, Dr. Wolfe reported that Rose stated that she was "doing reasonably well at this particular time with

---

[1] Although Rose's motion for summary judgment identifies her treating physician as Dr. David B. Williams, the Commissioner has noted that she is apparently referring instead to Dr. Frederick Wolfe based upon her citation to and reliance on a Physical Capacities Evaluation completed by Dr. Wolfe.

no new problems. She is able to do most of what she needs." [TR 290] Then, on October 18, 2005, Rose's next visit to Dr. Wolfe after the Physical Capacities Evaluation was filled out, Dr. Wolfe's records indicate that she "is doing fairly well at this particular time. She is fairly pleased with how well she is doing and what has gone on. She states that she is okay . . . her hands are better with less numbness, more mobility. She is not having as much trouble picking up pots and pans. . . Her neck and back are doing better." [TR 312]

Importantly, even if Dr. Wolfe's June 2005 opinion was accurate, Rose cannot show disability under the Social Security Act because any "disability" would not meet the durational requirement. Under the applicable regulations, disability is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). Dr. Wolfe's opinion of June 2005 must be read in conjunction with his office notes on and before February 2005 and on and after October 18, 2005. Only eight months separates the office visits of February 2005 and October 2005 wherein Rose was doing well, not long enough under the regulations to establish a disability.

Additionally, Dr. Wolfe's opinion is not supported by any objective evidence. Although he explains the limitations as based upon "long standing RA [rheumatoid arthritis] with difficulty Dressing, Cooking and Driving and stiffness," [TR 257] a neurological exam and MRI taken by Dr. Brooks, a neurosurgeon, two months later, were normal. Dr. Brooks could find no explanation for Rose's pain unless it was a virus. [302] Clearly, the findings of Dr. Brooks contradict the limitations imposed by Dr. Wolfe.

Moreover, Dr. Wolfe's opinion is inconsistent with the opinion of Dr. Nutter, a consultant

physician who examined Rose on February 7, 2006 and opined that she could sit six hours per workday, stand or walk for 5 hours, lift 20 pounds occasionally, 10 continually, could use her hands, should not work around unprotected heights, and should not do a lot of driving. Dr. Wolfe's more restrictive opinion is contrary to his own office notes, the clinical evidence, and the medical evidence. When there are variances in the opinions of the examiners, it is the duty of the ALJ to resolve these conflicts in evidence and assess the claimant's residual functional capacity. *See* 416.927(e), 416.946. The ALJ must consider not only the medical opinions, but also the other evidence presented. *Id.* Accordingly, in light of the inconsistencies between the medical opinions, Rose's subjective complaints and the conflicting accounts of her condition to medical providers, the ALJ did not err by rejecting portions of Dr. Wolfe's opinion.

Rose's final three arguments also fail. First, Rose argues that the ALJ improperly failed to consider the cumulative effect of her impairments. However, the ALJ clearly considered the cumulative effect of Rose's limitations, even modifying the findings of Dr. Nutter in her favor by adding hand manipulation limitations due to her complaints of hand problems. Second, Rose argues that the ALJ failed to consider whether she could hold out in a job. However, there is no evidence in the record, physician opinion or otherwise, that Rose cannot "hold out" in a job. In fact, Dr. Wolfe notes that she had "no difficulty in any of her activities," [TR 265] that she was "doing activities around the house, yard, garden, kitchen," [TR 260] and that "[s]he is able to do everything she needs to do to take care of herself." [TR 259] Finally, Rose argues that the ALJ ignored her testimony. A review of the ALJ's opinion, however, reveals that the ALJ explicitly discussed Rose's subjective complaints, but found them "not fully credible based on inconsistencies in the claimant's description of symptoms to various providers" and "the vast difference between the claimant's

allegations and the objective medical record." [TR 18]

### III.   CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby ORDERS that the decision of the Commissioner is AFFIRMED as it was supported by substantial evidence.

This the 26th day of September, 2007.



Signed By:
*Karl S. Forester*  KSF
United States Senior Judge